IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    vs.<br><br>JOSE MAES,<br><br>    Defendant. | 4:21CR3028<br><br>**FINDINGS, RECOMMENDATION AND ORDER** |

Defendant moves to suppress all evidence arising the stop of his vehicle on February 12, 2021. (Filing No. 69). Defendant claims the officers violated his Fourth Amendment rights. For the reasons stated below, the motion should be denied.

STATEMENT OF FACTS

With the agreement of counsel, the facts within the government's evidence filed of record (Filing Nos. 77, 83, and 85, (Exhibits A-E and G-J)), are presumed to be true, and the video recordings (Exhibit F) filed with the Clerk accurately depict the events at issue. Based on those submissions, the following undisputed evidence is relevant to Defendant's motion.

Prior to February 1, 2021, a Confidential Informant, (CI), who had provided reliable information to law enforcement in the past, told officers that Kelly J. Jablonski of Lincoln, Nebraska, was distributing methamphetamine provided by a source located in Omaha, Nebraska. (Filing No. 77-1, at CM/ECF p. 3). Using information obtained from a court-ordered GPS tracker and physical surveillance, investigators learned Jablonski was driving her white Jeep Compass to locations in Omaha, Nebraska, and Council Bluffs, Iowa. (Filing No. 77-1, at CM/ECF p. 5).

1

On February 11, 2021, at 1:19 p.m., officers saw Jablonski park her white Jeep Compass in the parking garage at the Horseshoe Casino located in Council Bluffs, Iowa. Jeffry A. Hogan exited Jablonski's vehicle and sat in the passenger seat of a gray GMC Acadia with Colorado license plate #BBOC49. Hogan then exited the Acadia with a backpack and returned to the white Jeep Compass. The Jeep Compass left the casino parking garage. (Filing No. 77-1, at CM/ECF p. 4 and Exhibit F, Horseshoe Casino - 02-11-21 DCI Video Request LC-(2).mp4).

At 11:40 p.m. on February 11, 2021, law enforcement stopped Jablonski's Jeep Compass and Hogan's 2016 white Town and Country while they were travelling on Interstate 80. During these traffic stops, officers found methamphetamine in both vehicles, and guns in Hogan's vehicle. (Filing No. 77-1, at CM/ECF p. 6). Jablonski identified her drug source as the person driving the gray GMC Acadia that she met at the Horseshoe Casino parking garage.

At 1:40 a.m. on February 12, 2021, law enforcement located the gray GMC Acadia in the Horseshoe Casino parking garage. The vehicle was placed under surveillance. (Filing No. 77-2). When a person exited the casino and entered the Acadia, S.A. Jake Burger of the Iowa Division of Narcotics Enforcement approached the Acadia in his patrol car and attempted to speak with the driver, later identified as Defendant Jose Maes. Patrol vehicle overhead lights were flashing at the time. (Filing No. 77-2, and Exhibit F, CBPD Parking Garage.mp4). Instead of speaking with law enforcement the defendant drove away.

With their patrol vehicle overhead lights and sirens consistently activated, law enforcement pursued Maes' vehicle out of the parking garage and onto I-29 southbound, then onto eastbound I-80, and then onto eastbound Highway 6, for a total of 32 miles. Stop sticks were deployed. After the Acadia drove over the

2

stop sticks and two of its passenger tires were deflated, the vehicle finally stopped near 260th and Highway 6 in Iowa. Jose Maes was arrested pursuant to an outstanding and extraditable Colorado felony warrant and for willful failure to stop for law enforcement. (Filing No. 77-2, 77-3, 83-3, and Exhibit F, Harker Bodycam-qia00724_20210212104314e0_01_000.mp4 & CBPD Parking Garage. mp4; Harker Car Cam 1- pha00067_20210212102541e0_01_000.mp4).

The vehicle was towed by law enforcement and thereafter searched pursuant to a warrant. (Filing No. 85-1). Inside the vehicle, officers found approximately one-quarter ounce of methamphetamine, approximately one ounce of marijuana, $34,153 in United States Currency, and a pistol with a loaded extended magazine. (Filing No. 77-4, at CM/ECF p. 12).

## ANALYSIS

Defendant moves to suppress all evidence and any statements he gave during the vehicle stop, investigation, detention and arrest conducted on February 12, 2021. He argues law enforcement lacked probable cause to conduct a traffic stop, and they lacked reasonable suspicion to conduct an investigatory stop. (Filing No. 70).

An investigatory Terry stop is lawful when, based on the totality of the circumstances, officers have "a particularized and objective basis for suspecting the particular person stopped of criminal activity." Parker v. Chard, 777 F.3d 977, 980 (8th Cir. 2015) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)). "Reasonable suspicion is a lower threshold than probable cause, and it requires considerably less than proof of wrongdoing by a preponderance of the evidence." Williams v. Decker, 767 F.3d 734, 739 (8th Cir. 2014), cert. denied,

3

574 U.S. 1165 (2015), (quoting United States v. Carpenter, 462 F.3d 981, 986 (8th Cir. 2006)).

The law enforcement officer who approached Defendant's vehicle in the parking garage was aware that Jablonski was a suspected drug dealer; Jablonski's vehicle had entered that same parking garage about 12 hours earlier with Jablonski driving and Hogan, a passenger, entered the gray Acadia and returned to Jablonski's vehicle with a backpack; Hogan's and Jablonski's vehicles were later stopped and methamphetamine was found in both vehicles; and Jablonski stated she obtained the drugs in her vehicle from the person in the gray Acadia at the Horseshoe Casino parking garage. Under such facts, law enforcement had reasonable suspicion to believe the gray Acadia in the Horseshoe Casino parking garage was being used for illegal drug activity. Law enforcement did not violate Maes' rights by approaching his vehicle with overhead police lights activated, and attempting to stop and speak with Maes before he exited the parking garage. United States v. Williams, 429 F.3d 767 (8th Cir. 2005) (holding the collective knowledge of officers, obtained from a tip that a vehicle contained illegal drugs and observations of suspected drug delivery activity obtained during law enforcement surveillance, was imputed to police officer at scene and was sufficient to provide reasonable suspicion to stop vehicle).

Even assuming the attempt to stop Defendant's vehicle in the parking garage violated Defendant's rights, his response to law enforcement justified the vehicular stop. United States v. Dawdy, 46 F.3d 1427 (8th Cir. 1995) ("[A] defendant's response to even an invalid arrest or Terry stop may constitute independent grounds for arrest."). Here, Defendant claims the stop of his vehicle, accomplished through the use of stop sticks, violated his Fourth Amendment rights. But a patrol vehicle's overhead lights were flashing as it approached the

Acadia in the parking garage. Instead of stopping, Defendant led law enforcement on a 32-mile chase while being followed by a patrol vehicle with its lights and siren engaged. Maes did not stop until his passenger tires were flattened by stop sticks. This attempt to evade law enforcement provided probable cause to stop Maes' vehicle. Id. (holding that even if the initial contact was unlawful, the later vehicular stop and the driver's arrest were lawful where the driver responded by starting his car and attempting to leave when the officer's squad car entered a parking lot, the driver attempted to turn his car around to avoid contact with officer even though the patrol vehicle's lights were flashing, and the officer got out of his squad car and held up his hand.). Moreover, Defendant's failure to stop in the parking garage was a misdemeanor under Iowa law, providing probable cause to stop the vehicle. I.C.A. § 321.279 ("The driver of a motor vehicle commits a serious misdemeanor if the driver willfully fails to bring the motor vehicle to a stop . . . after being given a visual and audible signal to stop" by law enforcement).

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by the defendant (Filing No. 69) be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before John M. Gerrard, United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on **June 6, 2022**, or as soon thereafter as the case may be called, for a duration of four (4) trial days. Jury selection will be held at the commencement of trial.

May 2, 2022.                              BY THE COURT:

                                                         *s/ Cheryl R. Zwart*
                                                         United States Magistrate Judge